## WEILER & HAAS *v.* MONROE COUNTY.

1. EVIDENCE. *Primary. Secondary.*

    The best evidence should be produced, or its absence accounted for, after failure of efforts to secure it, before secondary evidence is admissible.

2. SAME. *Lost writing.*

    The party seeking to introduce evidence of the contents of a writing said to be lost or destroyed, must first give some evidence that the original once existed.

3. SIXTEENTH SECTIONS. *Presumption.*

    In the absence of sufficient evidence, a lease of a sixteenth section, by school trustees, will not be presumed.

FROM the chancery court of Monroe county.

HON. BAXTER MCFARLAND, Chancellor.

This suit was instituted by Monroe county, under code 1892, ch. 123, seeking the adjudication of the title to a sixteenth section. The amended bill averred that the land was leased, December 26, 1833, by the old school trustees for ninety-nine years, and that defendants held under the lease. The lease was denied by defendants, and they claimed the lands in fee, and set up the twenty-five years statute, code 1892, § 4148, and the ten years statute of limitations. The court below decreed for complainant, fixing the expiration of the lease on December 26, 1932. Defendants appealed.

*E. H. Bristow*, for appellants.

We insist the chancellor erred in failing to exclude the two or three loose papers of memoranda found in the fly leaves of the old "probate court docket," and offered in evidence to prove the ninety-nine-year lease of the land in controversy,

charged in the amended bill to have been made December 26, 1833. It was wholly unauthenticated, except as to some uncertain and rather indefinite proof of the handwriting being that of one of the township trustees in 1833, written on four of the fly leaves of the old docket, between the index and the contents of the docket. There is not in the whole record any proof as to where this book was found, except that it certainly was not found among the old papers of the township trustees or their president or treasurer. If these memoranda are of any force, they must be so as records, and we submit that as records they are wholly unauthenticated. 1 Greenl. on Ev., 501; *Phillips* v. *Cooper*, 50 Miss., 722. Certainly they should be established by at least such evidence as is required to authenticate books of account (*Moody* v. *Roberts*, 41 Miss., 75); or to establish ancient documents (*Fairly* v. *Fairly*, 38 Miss., 280; *Nixon* v. *Porter*, 34 Miss., 687); or to authenticate United States department orders (*Davis* v. *Freeland*, 32 Miss., 645). But we submit these memoranda were no record at all, and, therefore, not competent as evidence. They were merely private entries made by private parties, and cannot be held to prejudice third persons, under the plainest rules of law. In the first place, on December 26, 1833, there was no law authorizing or requiring any such record to be kept. The act of January 9, 1824 (Hutch. code, 210, 211), only required the treasurer of the township board to "cause to be entered in a book, to be kept for that purpose, all orders of the trustees for the payment of money, and in what manner appropriated," etc.

The act of February 20, 1836 (Hutch. code, 217, 218), cannot apply to the entries in the old docket. These entries purport to have been made three years prior to the act of February, 1836. 1 Greenl. on Ev., 558; *Storm* v. *Green*, 51 Miss., 103; *Jelks* v. *Barrett*, 52 Miss., 315.

Complainant's counsel cite the act of February 28, 1838 (Laws 1838, p. 117). But it is conclusive that no lease was made on December 26, 1833, to any of the parties named. The

legislature, by special enactment, provides that trustees, thereafter to be elected, should make the "proper leasehold titles" to said section to the original lessees, or those claiming under them, "whenever said parties should make full and complete payment therefor," etc. The only legal question necessary to be considered is, whether at any time, prior to the twenty-five years' adverse possession, a legal sale could have been made of the land in fee by the township trustees; and this is answered at once by reference to the act of February 9, 1839 (Hutch. code, 219), providing for either sale or lease of said land, as might be determined by the trustees on the request of two-thirds of the heads of families in the township. After the passage of the act of February 9, 1839, it is well known that most of the sixteenth sections, if not all of them, remaining undisposed of, were sold as unsuitable for school purposes. There is no legal, no sufficient, evidence in the record of any lease. The doctrine of *nullum tempus* does not preclude this claim of the defendants. From the time of the code of 1857, § 402, which went into effect in November, 1857, down to, at least, the code of 1880, where the chapter of limitations was revised and consolidated, is twenty-three years in which the statutes ran against a county; and of this twenty-three years the defendants themselves held the land from 1863 and 1868 to 1880—that is, from twelve to seventeen years, even leaving out the many previous years of adverse holding by their grantor, Burns, and even his grantors. *Jones* v. *Madison County*, 72 Miss., 808. The act of 1877 (Laws 1877, p. 82), by its terms does not apply to counties.

*Gilleylan & Leftwich*, for the appellee.

The record, as shown by the old book labeled "Probate Docket," is admissible as testimony. See acts of 1833, compiled acts 1824–38, p. 452. The burden was on defendants to disprove the validity of this old book and show no lease of land was ever made, and, failing therein, makes it presumptive evi-

dence that the land was leased for ninety-nine years. This book can't be spurious. It is too minute; it speaks for itself. This record and its recitals bind the parties and their privies. It records the official acts of the trustees. All presumptions are entertained in behalf of trustees acting officially. *Davany* v. *Koon*, 45 Miss., 77; 47 Miss., 181; 48 Miss., 574. But if it should be held that this old book was not a public document, and competent as such, then we submit that, having proved that the same was found in the proper place of deposit, it is competent as an ancient document and admissible under the exception to the rule of hearsay evidence (Greenl. on Ev., secs. 141, 142, 143; also secs. 180, 189, 190, and notes); or, as stated by Mr. Greenleaf, may be introduced as part of the *res gestœ*, and, therefore, admissible as original evidence (*Idem.*, sec. 144).

The act of 1839 only confers the power to sell when the location of the land is unhealthy or otherwise unsuitable for schools, and then a majority of two-thirds of the heads of families of the township to which the same belongs, shall sign a written assent thereto. There is no proof that the locality of this land is unsuitable, unhealthy or otherwise unfit for schools, and not a word of proof showing any assent of the heads of families consenting to a sale. But counsel entirely misconstrues the statute. It does not apply, and was never intended to apply, to anything but the schoolhouse site—not to the entire section. But suppose, finally, that appellants should establish no lease had ever been made. They admit themselves to be in possession of trust property, the inhabitants of the township being the beneficiaries. They must also admit that no demand had ever been made upon them for the possession, and, until so made, their possession was not adverse, but permissive. One beneficiary could not thus get into the possession of the common property, and, before demand made upon him by the others, set up adverse possession. It would be inequitable and unjust, and not permissible in a court of equity. Weiler and

Haas being themselves beneficiaries in this express trust, they cannot set up the statute of limitations, either against the trustee or their co-beneficiaries, which they are here attempting to do. 27 Am. & Eng. Enc. L., 100, 101, 102, 103, 104, and authorities cited, especially at page 104.

WOODS, C. J., delivered the opinion of the court.

Whether any lease to the lands in question ever existed ought to have been shown in accordance with the established rules of evidence. The old book admitted in evidence, entitled "Probate Docket," while it shows that the preliminary steps were taken by the board of trustees to effect a lease in 1833 and 1834, yet fails to show that the lease was completed—fails to show whether final payment was made and the leasehold title conveyed to the lessees, as required by law. The record does not show that any conveyances were produced on the trial, nor any record of them, nor was any effort to produce them or to account for their absence shown, and no foundation was laid for the introduction of secondary evidence.

It is evident that said lease had not been completed as late as February 8, 1838, for an act of the legislature was then passed authorizing and requiring the trustees thereafter to be elected in township 14 south, in range 18 west, in Monroe county, to make to the lessees, or to those lawfully claiming under them, leasehold title to said section 16 of said township whenever full and complete payment should be made therefor. See acts of 1838, p. 117.

Furthermore, it would appear that no conveyance could have ever been made to the land bid off by J. H. Bell, since two of his purchase money notes are produced on trial, and, from the custody in which found, would seem never to have been paid. The record fails to disclose whether that act was complied with and the deeds made. They were not produced, nor was their absence accounted for. It is not impossible that the section here in question might have been sold under the act of the leg-

islature of February 9, 1839, if the lease was not perfected. See act of 1839, p. 34.  The best evidence should be produced, or its absence accounted for, after efforts to secure it had failed, before secondary evidence can be introduced.

The testimony in this case, as we think, is not sufficiently certain nor clear enough to authorize the court to declare that a valid lease of said lands was completed.  The decree of the court below is therefore reversed and the cause remanded to be tried according to the established rules of evidence.

*Reversed and remanded.*

After the delivery of the foregoing opinion the solicitors of the appellee filed a suggestion of error.

WHITFIELD, J., delivered the opinion of the court in response to the suggestion of error.

The omitted testimony, inadvertently left out of the original transcript and now, by consent, therein incorporated, goes only to the diligence of the search, by the attorney of appellee, for the alleged lost lease—not at all to show that such lease ever, in fact, existed.  The principle of law controlling on this point is, as stated in 1 Taylor on Evidence (9th ed.), 429, edited by Chamberlayne, this: "First, if an instrument be lost or destroyed, a party who seeks to give secondary evidence of its contents must, to begin with, give some evidence that the original once existed, and then," etc.

We reversed the case for the absence of satisfactory proof in the peculiar case under the statutes—act of February 8, 1838, and others—and the facts.  Of course appellee will be allowed still to make such proof, if it can.

*Suggestion overruled.*